John Jay Knox and another *vs.* Elizabeth C. Randall and others.

April 6, 1878.

"Hart Judgment."—Marshall v. Hart, 4 Minn. 352, (450,) Followed.—*Marshall* v. *Hart*, 4 Minn. 352, (450,) followed, in holding a certain judgment (known as the Hart judgment) and the lien thereof to be valid.

Judgment—Execution—New Attorney.—A judgment creditor may employ a new attorney to enforce his judgment, without any formal substitution or notice.

Execution—District Court—Questions Passed Upon in Making Order for Issuance of Execution.—Under the practice prevailing in 1859 a district court, in making an order directing the issue of an execution, passed upon all questions the determination of which was necessary to the proper disposition of the motion for such issuance, including the question of its

own jurisdiction to entertain the motion for such issuance, the question of the authority of the person making the motion to make it and to give notice of it, and the question whether the judgment was paid or . not.

**Same—Levy Upon Real Estate.**—Though a formal levy was not *necessary* to a valid levy upon real estate, it was regularly proper as a step in the regular execution of a writ of execution under the law as it stood in the Public Statutes.

**Same—Same—Commencement of Execution of Writ—Sale After Return Day.**— It follows that a sheriff holding a writ of execution, who had made such formal levy upon real estate, had commenced the execution of his writ. Having thus commenced the execution of the writ, the sheriff was authorized to go on and complete it by a sale after the return day.

**Same—Effect of Injunction—Sale by Sheriff After Expiration of Term of Office.**— The effect of an injunction of an execution sale is to stop the proceedings upon the execution where they are. But such injunction does not operate to kill the execution, or to destroy or impair a levy made under it. It is therefore competent for the sheriff holding such writ of execution to go on after the dissolution of the injunction, and even after the expiration of his term of office, and complete the proceedings commenced by him.

**Mortgage to Trustee—Purchase of Mortgaged Premises by Part of the Cestuis que Trust—When Purchase Enures to the Benefit of all the Cestuis que Trust.**— R. being indebted to sundry persons, made separate notes for the sum due each respectively. The notes ran to M., to whom, as trustee, R. also executed a mortgage of real estate to secure said notes. M. turned over to each of R.'s said creditors a note corresponding in amount to the sum due such creditor. The mortgaged property, consisting of several parcels of land, was subject to the paramount lien of a judgment, in satisfaction of which most of the mortgaged property was sold upon execution. Four several holders of R.'s notes, aforesaid, and *cestuis que trust* of the mortgage, purchased of H., a purchaser at the judgment sale, his rights in sundry specified lots and parcels of the lands sold at the execution sale, and took assignments of such rights. No redemption having been made, said parcels so purchased were conveyed by sheriff's deeds to said four persons respectively, or their assigns. These purchases were made, and assignments taken by each of said four persons severally. In taking the assignments they did not act under or in pursuance of any mutual agreement, but each one bought as he himself thought proper, in order to secure his own interest in the notes and mortgage. The plaintiff—holder of some of the notes—and, therefore, a *cestui que trust* in the mortgage, and those under whom he claims, knew of the purchases aforesaid at or shortly after the time when they were made, between March 1 and September 1, 1861. Prior to the commencement of this action neither the plaintiff nor those through whom

he claims ever made any claim to the purchasers, (the four persons afore-said,) or to any or either of them, that their said purchases enured to the benefit of all the owners of the notes aforesaid, or to the benefit of the plaintiff or those under whom he claims. Nor did he or they claim any interest in the lands embraced in said purchases, nor ever offer to contribute or refund his or their proportion, or any proportion, of the moneys expended in making such purchases, or any part of the same, or ever make any demand of said purchasers, or either of them, to be allowed to come in and share the benefits of said purchases, upon making contribution or otherwise. This action in which the plaintiff seeks to be permitted to come in and share the benefit of the purchases so made, was commenced in July 1870. It appeared that the trustee departed from the state in 1859 or 1860, and has since remained out of it, and has, during all the time since his departure, wholly failed and neglected to look after or attend to his duties as trustee, or to enforce the payment of the notes aforesaid, by foreclosure or otherwise, or to protect the interests of his *cestuis que trust*. *Held*, that at the time of the purchases by the four persons above named there was such a community of inter-est between them and their *co-cestuis que trust* that such purchases enured at the election of such *co-cestuis que trust*, made within a reasonable time, and upon proportionate contribution, to the mutual benefit of all the *ces-tuis que trust*.

Same—Same—When Claim of Cestui que Trust Lost by Laches.—*Held, further,* that the plaintiff having allowed so long a time to elapse before attempt-ing to make such election, and in the absence of any excuse on his part, or proof of fraud on the part of said four purchasers or of want of notice on the part of the plaintiff and those through whom he claims, must be held to have been guilty of laches, and to have abandoned any claim to any benefit from the purchases aforesaid, made by his said four *co-cestuis que trust*.

On September 10, 1857, one William H. Randall, being indebted to various banking houses in the city of St. Paul, and among them to the firm of John J. Knox & Co., of which the plaintiff was a member, executed promissory notes for the several amounts due his creditors respectively, all which notes were made payable to the order of one Joseph M. Marshall, and were by him indorsed without recourse, and delivered to the respective creditors. At the same time Ran-dall, to secure these notes, executed to Marshall a mortgage upon a large amount of real estate in St. Paul, and Marshall by an instrument bearing even date with the mortgage, and recorded at the same time with it, on September 15, 1857,

wherein he declared that he held such mortgage in trust for the respective holders of the several notes described therein.

At the date of these transactions the mortgaged property was subject to the liens of certain judgments recovered against Randall in 1856 and 1857, under which the mortgaged property was sold on execution, and was redeemed from such sales by Marshall with moneys furnished by the holders of the mortgage notes. These redemptions were made by Marshall, the trustee, as holder of a junior judgment against Randall, purchased for that purpose with moneys also furnished by the holders of the mortgage notes, and no redemption having been made from him, he received from the sheriff, on March 31, 1859, proper deeds of the property so redeemed by him. On February 10, 1859, after he had made the redemptions, and before receiving the sheriff's deeds, Marshall executed a second declaration of trust, reciting the mortgage and his former declaration, and the redemptions made by him, and declaring that he held the title acquired or to be acquired by virtue of the redemptions in trust for the holders of the mortgage notes. This last declaration was recorded February 21, 1859.

On September 17, 1850, prior to the rendition of any of the above mentioned judgments, a judgment for $3,635.13 was rendered and docketed in the territorial district court for Ramsey county in favor of one Henry N. Hart and against Randall   Execution on this judgment was issued on March 29, 1859, and on September 29, 1859, delivered to the sheriff of the county, who by his deputy levied on the greater part of the mortgaged property, and on September 8, 1860, after he had gone out of office, the sheriff, by virtue of his execution, sold the property levied on to Hart, the judgment creditor, in parcels, and delivered to him the proper certificate of sale. The sale was made by the same deputy who made the levy. At various dates in 1861 Hart made several transfers of his interest in different parcels purchased by him, at the price he had himself bid for them, with interest, such transfers being

made to Israel G. Lash, to Orlando B. Turrell, to Ira Bidwell and to William P. Burrall, each of whom was at the time of his purchase a holder of one or more of the mortgage notes, and to each of whom, or his grantees, the sheriff, after the expiration of the time for redemption from the execution sale, and no redemption having been made, executed the proper conveyances. By sundry mesne conveyances and transfers, the defendants Davidson and Allis had become owners of the greater part of the lands sold under the Hart judgment, and of most of the mortgage notes.

The circumstances relied on by the plaintiff as invalidating the Hart judgment, and the execution and sale thereunder, are stated in the opinion.

Marshall, the trustee, having left the state in 1859, or 1860, and remained absent, paying no attention to his duties as trustee, the plaintiff, as owner of three of the mortgage notes, which had been transferred to his father, John J. Knox, in July, 1860, and by him to the plaintiff in 1870, brought this action in July, 1870, in the district court for Ramsey county, claiming that the Hart judgment and execution, and the sale thereunder, were void, and praying that the mortgage be foreclosed, and the mortgage property sold; that all sums advanced by any note-holder in payment of any liens that might be adjudged prior to that of the mortgage on any part of the mortgaged premises, be deemed to have been paid out and advanced for the benefit of all the note-holders in proportion to their interest in the mortgage debt; and that any sum so advanced by any *cestui que trust* be first paid with interest out of the proceeds of the sale, and that the proceeds be then applied in payment of the amount due on the mortgage notes; or if the court should determine that no trust arose in said lands for said advancements, and by reason of the purchase of alleged prior liens, and that the defendants so purchasing and advancing have acquired an indefeasible and absolute estate, then that the actual value of the lands to which the title has so vested in such *cestuis que trust* be

ascertained by the court, and applied to the payment and extinguishment of the mortgage notes held by such *cestuis que trust* at the time such advancements and payments were made, and that any residue of the mortgaged premises not so vested may be sold and the proceeds applied as above prayed, after applying the value of the mortgaged premises to which title has thus been made, to the payment of such portions of the mortgage debt as shall remain unpaid after such applications.

Upon a trial before *Wilkin*, J., the court found the facts above recited, and others which are set forth in the opinion.

Among other conclusions of law the court held that the plaintiff had no claim to a division of any of the property purchased under the Hart judgment, or to subject it to a foreclosure, and directed a foreclosure and sale of the mortgaged property. other than that sold under the Hart judgment. Judgment was entered accordingly, and the plaintiff and William H Nobles, one of the defendants, appealed.

*John B. & W. H Sanborn*, for the appellant John Jay Knox.

The Hart judgment was void, (*Hart* v. *Marshall*, 4 Minn. 211, (294;) Id. 352, (450;) *Mathews* v. *Moore*, 2 Murphy, (N. C.) 181; *Polhemus* v. *Perkins*, 3 Green, (N. J.) 435; *Wheeler* v. *Scott*, 3 Wis. 362; *Taylor* v. *Runyan*, 3 Clarke, 474; *Martin* v. *Bernhard*, 39 Ill. 9; *Hinson* v. *Wall*, 20 Ala. 298; *Lentilhon* v. *Mayor*, 3 Sandf. 721; *Dean* v. *Williams*, 1 Chandler, 22; *Remington* v. *Cummings*, 5 Wis. 138; *Lincoln* v. *Cross*, 11 Wis. 94; Freem. on Judg. §§ 52, 55, n.) and even if valid it was never so entered or docketed as to constitute a lien upon the real estate owned by Randall. Organic Act of Minn. § 12; Rev. St. *c.* 137, § 1; Stat. of Wisconsin of 1838, 1839, p. 226; Stat. of Wisconsin of 1849, p. 534.

Again, the execution and sale thereunder were void, not only because there was no valid judgment, (*Albee* v. *Ward*, 8 Mass. 79; *Crisswell* v. *Ragsdale*, 18 Tex. 443; *Parker* v. *Frambes*, 1 Pen. (N. J.) 156; *Lofton* v. *Champion*, Id. 157; *Lee* v. *Stulman*, Id. 319; *Rector* v. *Gale*, Hardin, 78; *Hunt* v. *Loucks*, 38 Cal. 372; Freem. on Ex. §§ 38, 42, 43,) but also because the

writ was never applied for by the plaintiff or his attorney, (Freem. on Ex. § 38,) was issued without proper evidence that the judgment had not been paid, (*Simson* v. *Wilson*, 3 Met. 202,) and when it had in fact been annulled and destroyed by a writ of injunction. *Keith* v. *Wilson*, 3 Met. 205; *Eldridge* v. *Chambers*, 8 B. Mon. 411; *Burks* v. *Bass*, 4 Bibb, 338; *Bullen* v. *Ovey*, 16 Vesey, 141; Eden on Inj. 100, 101. Also because the execution was not subscribed by the party or his attorney, (Pub. St. *c*. 61, § 82,) because no attempt was first made by the sheriff to levy upon the personal property of the judgment debtor, (Pub. St. *c*. 61, § 82, *subd*. 1; *Koehler* v. *Ball*, 2 Kan. 160,) and finally because there were no existing unfinished proceedings pending upon said execution at the expiration of the term of office of the sheriff who had the writ in charge.

No act contemplated by law was done under or by virtue of said execution within sixty days from the date of its issuance, and it was consequently dead when that period of time had expired.

It is true that the execution was delivered to the sheriff September 29, 1859, and a levy was made October 1, 1859; but under the laws and practice of this state a levy on real estate is an act not required by law, and therefore does not constitute a single step in the execution of the process, and hence cannot serve to keep alive the execution, or justify its retention beyond the return day. *Tullis* v. *Brawley*, 3 Minn. 191, (277;) *Folsom* v. *Carli*, 5 Minn. 264, (333;) *Bidwell* v. *Coleman*, 11 Minn. 45, (78.)

If, however, the execution was not void, then all the holders of these mortgage notes had a common interest in a common subject as co-mortgagees, and any purchase made by one of such mortgagees, of any lien upon the mortgaged property, would necessarily enure to the benefit of all. Parsons on Part. 225; *Featherstonaugh* v. *Fenwick*, 17 Ves. 298, 310; *Dougherty* v. *Van Nostrand*, 1 Hoff. 68, 69; *Leach* v.

*Leach,* 18 Pick. 68, 76; *Anderson* v. *Lemon,* 4 N. Y. 236; *Anderson* v. *Lemon,* 4 Sandf. 552.

Indeed, under our statutes, co-mortgagees are expressly declared to be joint tenants, (Gen. St. *c.* 45, § 45,) and it is well established that if a co-tenant purchases an outstanding or adverse title, it enures to the benefit of all his co-tenants. *Van Horne* v. *Fonda,* 5 John. Ch. 388; *Rothwell* v. *Dewees,* 2 Black, 619; *Gossom* v. *Donaldson,* 18 B. Mon. 238; *Weaver* v. *Wible,* 25 Pa. St. 270; *Lloyd* v. *Lynch,* 28 Pa. St. 420; *Gibson* v. *Winslow,* 46 Pa. St. 380; *Cook* v. *Nicholas,* 2 W. & S. 27; *Oeslayer* v. *Fisher,* 2 Pa. St. 467; *Smiley* v. *Dixon,* 1 Penn. 439; *Jones* v. *Stanton,* 11 Mo. 433; *Page* v. *Webster,* 8 Mich. 263; *Butler* v. *Porter,* 13 Mich. 292; *Botsford* v. *Burr,* 2 John. Ch. 409; *Taylor* v. *Bassett,* 3 N. H. 294.

The parties who purchased the title made by the sale under the Hart judgment had notice of the trust, and hold the estate in trust for the *pro rata* payment of all the notes and mortgage debt. *Moore* v. *Ware,* 38 Me. 498; *Funk* v. *McReynolds,* 33 Ill. 497; *Horton* v. *Maffitt,* 14 Minn. 292. It follows, therefore, that there can be no laches on the part of any one of the parties in interest, till the right of action to foreclose the mortgage and adjust and finally determine the relative right of all parties to the common property, or the proceeds of the sale thereof, has been barred by the statute of limitations. The statutory right to determine all these questions for a given period of time supersedes all discretion in courts of equity. The question of laches cannot arise in such a case as this, when a party has proceeded to enforce his rights within the time allowed by law, unless he has failed to contribute his due share after notice given and demand made. *Miller* v. *McIntyre,* 6 Pet. 61; *Elmendorf* v. *Taylor,* 10 Wheat. 168; *Boone* v. *Chiles,* 10 Pet. 177; *Decouche* v. *Savetier,* 3 John. Ch. 216.

If it be conceded that the resulting trust became operative in October, 1861, when the sheriff executed his deed under the Hart sale to certain of the *cestuis que trust,* and that no demand for

a proportionate share of the mortgage estate was made by the plaintiffs until suit brought in July, 1870, there is still less than an interval of nine years; and the duty of protecting and adjusting all these rights during all that time had devolved upon a trustee upon whom all parties had agreed; and the *cestui que trust* here proceeded to have his rights adjudicated in court as soon as it was apparent that the trustee was about to sacrifice the same. Under such circumstances it is clear that laches cannot be imputed to the plaintiff. 1 Perry on Trusts, 280–282; 2 Story Eq. Jur. § 1521; Ang. on Lim. 21, § 26; *Ward* v. *Van Bokelin,* 1 Paige, 100; *Farnham* v. *Brooks,* 9 Pick. 212; *Banks* v. *Judah,* 8 Conn 145; *Warner* v. *Daniels,* 1 W. & M. 90; *Dugan* v. *Gittings,* 3 Gill. 138. Neither have the defendants pleaded laches or the statute of limitations. The defendants also had both actual and constructive notice of the rights and equities of the plaintiff, (*Le Neve* v. *Le Neve,* 2 Lead. Cas. Eq. (3d Am. Ed.) 127, 163; *May* v. *Le Claire,* 11 Wall. 217,) and they have not sought to plead the want of such notice.

*W. P. Warner,* for appellant William H. Nobles.

The transfer of the notes passed the mortgage which was incident to the debt, and after such transfer the trustee, Marshall, no longer owned or had any interest in the securities or either of them. The declaration of trust was therefore founded upon a misconception, and was in effect a simple announcement of the facts which worked a termination of the trust. It therefore follows that from the start no one could institute a foreclosure suit upon the mortgage under consideration save one or more of the note-holders. Again, the lien of this mortgage was extinguished as to all the lands in Ramsey county, and the trust itself terminated by the sales made under the paramount lien of the Hart judgment. The plaintiff, therefore, properly brought the suit to foreclose the mortgage on the lands not swept out from under the mortgage by the Hart sale, and he necessarily joined all the other parties

as defendants, because they were in fact adversaries and were opposing him.

Plaintiff's claim as to the Ramsey county property grew out of equitable principles simply, and his right to have an accounting and sale in that behalf was not a right to foreclose. Had not the two claims been interlocked the bill might have been multifarious, but in any event this question is waived by the answer. It is obvious that the plaintiff was the proper party to sue as to both branches of the relief sought. Gen. St. c. 66, §§ 77, 78, 107; Pomeroy on Remedies, § 207; *Hagan* v. *Walker*, 14 How. 29; *Clark* v. *Clark*, 17 How. 315; *Cowdrey* v. *Galveston R. Co.* 11 Wall. 478, 479; *Lowry* v. *Harris*, 12 Minn. 264.

The court below denied the relief sought upon the ground of laches. Now it has not been found that the purchases from Hart were fraudulent, and it will, therefore, be presumed that they were made in good faith and for the common benefit of all the mortgage creditors. *Horton* v. *Maffitt*, 14 Minn. 292; *Rothwell* v. *Dewees*, 2 Black, 613; *Van Horn* v. *Fonda*, 5 John. Ch. 388; Freem. on Co-tenancy, § 263; Story Eq. Jur. §§ 505, 1235; Perry on Trusts, § 431. The suit was brought, as to the Ramsey county lands, merely to enforce a constructive trust arising by operation of law out of the relation of the parties. Such a right of action was barred in ten years, under the statute in force when such trust had its inception. This period of limitation was abolished August 1, 1866, by the General Statutes. There were no laches up to that date. From that time the matters stood as at common law. The suit was brought in April, 1870. This was within four years after laches began to run, and within nine years from the date of the trust. No case at all parallel in its circumstances can be found where so short a delay has been held a bar. Perry on Trusts, § 281. Moreover this defence has not been pleaded, and it has thereby been waived. *McArdle* v. *McArdle*, 12 Minn. 105, 106; *Hoyt* v. *McNeil*, 13 Minn. 392, 393. In any event the relief should not have been wholly denied upon

grounds of delay, but unquestionably should have been allowed as to those parties who were not *bona fide* purchasers. *Hallett* v. *Collins*, 10 How. 174, 175, 187; *Meader* v. *Norton*, 11 Wall. 458.

Again, the Hart sales were void because the proceedings under which the sales were made had never progressed to a judgment. Laws of Wisconsin, 1839, p. 226, §§ 1, 2; Id. p. 228, §§ 13, 14, 15; *Marvin* v. *Herrick*, 5 Wend. 109; *Walters* v. *Sykes*, 22 Wend. 566; *Barrie* v. *Dana*, 20 John. 307; *Croswell* v. *Byrnes*, 9 John. 289; *Williams* v. *McGrade*, 13 Minn. 49, 51. Besides, the judgment of *Marshall* v. *Hart* can work no estoppel in this cause because it was not pleaded or proved or found, and this court cannot go out of the record for facts upon which to found an estoppel. *Smith* v. *Barber*, 7 Ohio, 456. It also appears that under the facts found the power to sell the real estate under the execution never vested in the sheriff. The writ commanded that officer to satisfy the judgment out of the personal property of Randall, and only if sufficient personal property could not be found, then out of real property. This was the power of attorney under which the sheriff was to act, and such power should be strictly construed. *Grantley's Lessee* v. *Ewing*, 3 How. 712, 714, 715; *Tweedy* v. *Picket*, 1 Day, 109; *United States* v. *Slade*, 2 Mason, 71; *Harrison* v. *Doe*, 2 Blackf. 1.

Finally, the levy on the real estate was an idle and superfluous ceremony, neither changing the *status* of the property nor affecting the rights of any person in the same. *Lockwood* v. *Bigelow*, 11 Minn. 70, (116.) The sheriff, therefore, did nothing to keep the execution alive, and the same should consequently have been returned to the court. Freem. on Ex. §§ 106, 333.

*Williams & Davidson*, for respondent W. F. Davidson.

Where a mortgage is given to a trustee to secure a number of debts, the trustee only has the right to bring a suit to foreclose the mortgage whenever he thinks it advisable, and in the forum he may select. If the holder of one portion of the

debt may bring suit, he may thereby drag the trustee and all others interested into the court he may select. The trustee may deem it inexpedient to foreclose. Mere abandonment or mismanagement by the trustee does not divest the legal estate of the mortgagee. *Webster* v. *Vanderventer*, 6 Gray, 428; *Hartwell* v. *Blocker*, 6 Ala 581; *Johnson* v. *Brown*, 11 Foster, 405. Certainly the bondholder should first make a demand upon the trustee to proceed, and offer to pay the expenses, or indemnify him against costs. This court has determined that the Hart judgment is valid—*Marshall* v. *Hart*, 4 Minn. 352 (450)—and that decision is not only sustained by the authorities, (*Duel* v. *Hawke*, 2 Minn. 37 (50;) *Ins. Co.* v. *Swift*, 12 Minn. 437, 444; *Fish* v. *Emerson*, 44 N. Y. 376; *Story* v. *Kimball*, 6 Vt. 541; *Barrett* v. *Garrigan*, 16 Iowa, 47; *Anderson* v. *Kimbrough*, 5 Cald. 260; *Wells* v. *Hogan*, Breese, 337; *Johnson* v. *Gillett*, 52 Ill. 360; *Ordinary* v. *McClure*, 1 Bailey, 7,) but, as the appellant claims under Marshall, conclusive in this case.

The execution was properly issued—Pub. St. *c.* 61, § 85; *Hinkley* v. *Water Co.* 9 Minn. 44 (55)—and the order authorizing the issuance having been made by a court of general jurisdiction, it must be presumed that the order was properly made, on motion of the plaintiff, and that it was established by the oath of the party, or other proof that the judgment, or some part thereof, remained unsatisfied and due. If the order was improperly made, the only remedy was by appeal. The sheriff was required to levy upon and sell real estate, if he could not find any personal property, (Pub. St. *c.* 61, §§ 82, 82; Id. *c.* 60. § 148,) and the presumption is that the officer acted lawfully. In any event it was not incumbent upon the parties claiming under the sheriff's sale to show that no personal property could be found. *Neilson* v. *Neilson*, 5 Barb. 565.

The injunction stayed the proceedings, but left the writ in the hands of the officer with a legal levy. The authorities cited by the appellant only go to the point that where a *fi. fa.*

has been issued, property seized, an injunction issued, and a return of the writ, that a writ of *vend. ex.* cannot be lawfully issued under the statutes of Kentucky. *Davies* v. *Myers,* 13 B. Mon. 511; *N. W. Ex. Co.* v. *Landes,* 6 Minn. 400, (564;) *Bank* v. *Rogers,* 13 Minn. 407. In order to establish a title to real estate under a sheriff's deed, it is only necessary to show a judgment, execution, and sheriff's deed, (*Tillman* v. *Jackson,* 1 Minn. 157, (183;) *Tullis* v. *Brawley,* 3 Minn. 191, (277;) *Spafford* v. *Beach,* 2 Doug. (Mich.) 150;) and, therefore, if the sheriff did not proceed strictly in accordance with the provisions of the statute, such omissions were mere irregularities, which do not affect the title of the purchaser. In any point of view, even if these proceedings were voidable, the court cannot, in this suit, treat them as void. *Cooper* v. *Harter,* 2 Ind. 252; *Young* v. *Smith,* 10 B. Mon. 293; *Emley* v. *Dunn,* 36 Pa. St. 123; *Ayres* v. *Duprey,* 27 Tex. 593; *Cloud* v. *El Dorado Co.* 12 Cal. 128, 133.

The plaintiff has no equities. As owner of one-tenth of the mortgage debt he had the right to redeem by paying one-tenth of the Hart purchase within the time allowed him to redeem. This he did not do, but with full knowledge stood by for years and permitted the parties to deal with the property as their own, until it had greatly enhanced in value. He cannot now, therefore, come into a court of equity and ask relief upon purely technical grounds, where there has been neither conscience, good faith, nor reasonable diligence. Story Eq. Jur. § 1520 n. 1. If the purchasers were trustees the purchase was not void, but merely voidable, (Story Eq. Jur. § 322,) and this conclusively establishes that it was the duty of the plaintiff to move first in the matter, and wait until he was called upon to decide. A short period is sufficient to bar a person under such circumstances, where he has full knowledge of all the facts, (Perry on Trusts, § 870,) and a sale to a trustee cannot be set aside by the *cestui que trust* after a great lapse of time. Perry on Trusts, § 869; Story Eq. Jur. §§ 1520–1522; *Kane* v. *Bloodgood,* 7 John. Ch. 89, 117; *De Couche* v. *Savetier,* 3 John.

Ch. 190, 217; *Murray* v. *Murray*, 20 John. 575; *Hawley* v. *Cramer*, 4 Cow. 717; *Prevost* v. *Gratz*, 1 Pet. C. C. 364–368; *Parkes* v. *White*, 11 Ves. jr. 209, 226; *Campbell* v. *Walker*, 5 Ves. jr. 678–681, n. *a*; *Morse* v. *Royall*, 12 Ves. jr. 374; *Whichcote* v. *Lawrence*, 3 Ves. jr. 740, n. *a*; *Wright* v. *Vanderplank*, 57 Eng. Ch. 132; *Roberts* v. *Tunstall*, 30 Eng. Ch. 257–266; *Tatam* v. *Williams*, 3 Hare, 347; *Browne* v. *Cross*, 14 Beav. 105; *Reimers* v. *Druce*, 23 Beav. 145–156.

Finally, the defendants were *bona fide* purchasers for value without notice of plaintiff's rights. Davidson had no actual notice, and notice to Allis was not notice to Davidson. Knowledge acquired by Allis, as attorney for other parties, was not knowledge which he could or did communicate to Davidson. Indeed, if the rule were otherwise, no person could safely employ an attorney of large experience or practice. 1 Hil. on Vend. 400, 408.

*Morris Lamprey*, for other respondents.

BERRY, J. On September 10, 1857, William H. Randall, being indebted to certain bankers of St. Paul in the sum of $176,288.80, executed notes for the amounts owing to each respectively, and a mortgage upon real estate to secure the same. The notes and mortgage were made to run to Joseph M. Marshall, who at the same time transferred the notes to the creditors, so as to give to each respectively notes for the amounts owing to him. Marshall at the same time executed and recorded a declaration of trust to the effect that he held the mortgage in trust for such creditors in proportion to their respective demands. The mortgaged premises were encumbered by five judgment liens, paramount to the mortgage. Upon four of the judgments execution sales were had of portions of the mortgaged premises.

For the purpose of protecting their security, the beneficiaries in the mortgage, in proportion to their respective interests and upon Marshall's requisition, advanced money, with which Marshall, in March, 1858, purchased one of the five judgments, and under the same redeemed all the property

sold upon the former execution sales, except the portion which was sold at one of the sales to one Oliver. No one having redeemed from Marshall, he received sheriff's deeds of the redeemed property.

February 10, 1859, Marshall executed and recorded a second declaration of trust, reciting the facts aforesaid, relative to the judgments and redemptions, and declaring that he held the judgments and redemption titles, and all right, title and interest acquired, or which he might acquire, by virtue of such redemptions, for the benefit of the parties for whose benefit the first declaration of trust was executed, and their representatives and assigns, in accordance with their interests and equitable rights in the premises.

The plaintiff is the owner and holder of three of the notes made to Marshall as above stated, subject to the interest therein of R. B. Galusha, as assignee of W. L. Banning & Co. All of the other notes made to Marshall are owned by defendants Allis and Davidson, except one, which is owned by defendant Warner.

It is found by the court below that a certain alleged judgment in favor of Henry N. Hart against William H. Randall was a valid judgment, and was a prior lien upon the property embraced in the mortgage to Marshall.

This judgment came in question in *Marshall* v *Hart,* 4 Minn. 352, (450,) upon substantially the same objections made to it in the case at bar, and was held to be valid. As respects the question of the validity of the Hart judgment, the interests of all of the parties to the action at bar were represented in that action. The judgment in *Marshall* v. *Hart* is, therefore, as respects the question of the validity of the Hart judgment, binding and conclusive upon the parties to this action, for they were all either parties to the judgment in Hart against Marshall, or the privies of those who were parties. It follows that, upon the question of the validity of the Hart judgment in the present action, the judgment in *Hart* v. *Marshall* might have been pleaded in estoppel. It was not

so pleaded.   Neither does it appear to have been introduced in evidence, as it might have been, although not pleaded in estoppel.   Stephen on Evidence, art. 43.   But, although the defendants have not availed themselves of it as they might have done, we think it ought to control, in this case, upon the principle of *stare decisis*.   It is a decision of this court upholding the validity of the identical judgment involved in the action at bar.   Whether it is necessary to treat it as a decision of the general question of the validity of judgments like that here involved or not, it is a decision in favor of the validity of this particular judgment in an action between parties who represent all the parties to this action.   We shall, therefore, follow it without hesitation.

In the same case *(Marshall* v. *Hart)* it was further held that the Hart judgment was a valid lien upon the property, covered by the mortgage to Marshall, lying in Ramsey county. For the reasons above given we follow this holding also.   The judgment and its lien are therefore to be taken as valid.

Several objections are taken to the execution issued upon the Hart judgment.   The objection that there was no judgment upon which to base it is disposed of by what we have already said.

It appears that Hollinshead, an attorney of the court in which the judgment was rendered, but who was not one of the plaintiff's attorneys of record in the action before judgment, caused a notice, signed by himself as plaintiff's attorney, to be served upon Randall, the judgment debtor, personally, to the effect that on March 28, 1859, a motion would be made before the proper judge for leave to issue execution upon the judgment, for the reason that the same was wholly due and unsatisfied, and that in support of the motion he would read the record in the action and his affidavit (a copy of which accompanied the notice) to the effect that he was the attorney at law and agent of plaintiff in the action ; that the judgment had been duly rendered and docketed, and was wholly unsatisfied and due.   Nothing, except as above, appears

among the records of the action showing the appointment or substitution of Hollinshead as attorney for plaintiff in the action. It is found that an order signed by the judge of the court was duly filed on March 29, 1859, directing execution to be issued upon the judgment for the amount thereof, with interest. Upon this state of facts, the execution which was issued March 29, 1859, in usual form, must be held to have been duly and regularly issued. It was not necessary that the application for its issue should be made by the attorneys in the action before judgment. Section 14, *c.* 82, Pub. St. (which is now section 13, *c.* 88, Gen. St.) requiring notice of change of attorney and substitution of a new attorney to be given, has relation only to changes and substitutions made before, and not to changes or substitutions made after judgment. A judgment creditor may employ a new attorney to enforce a judgment without any formal substitution or notice. Pub. St. *c.* 82, § 10; Gen. St. *c.* 88: § 9; *Hinkley* v. *St. Anthony Falls Water Power Co.* 9 Minn. 44, (55;) *Berthold* v. *Fox*, 21 Minn. 51.

The order directing the issue of the execution was the adjudication of a court of general jurisdiction, and therefore presumptively correct. On making it the court passed upon and settled the question of its own jurisdiction to entertain the motion, including the question of the authority of Hollinshead to make it, to give notice to Randall, and to appear for Hart. It also passed upon the question whether the judgment was paid or not, and all other questions, the determination of which was necessary to the proper disposition of the motion for the issuance of an execution. Upon these grounds, and upon the facts above stated, the execution which was issued March 29, 1859, in usual form, must be held to have been duly and regularly issued, and its indorsement by Hollinshead, as attorney for the plaintiff, must also be held to have been correct.

The execution was delivered to the sheriff of Ramsey county on September 29, 1859, and by him served upon

Randall, and levied upon the Ramsey county real estate before mentioned, by leaving and posting copies of the execution as provided, in case of attachments of real property, in section 148, c. 60, Pub. St. Section 88, c. 61, Pub. St., declared that "all property liable to attachment is liable to execution; it must be levied on in the same way that similar property is attached; until a levy property is not affected by the execution." In *Tullis* v. *Brawley*, 3 Minn. 191, (277,) this court was of opinion that the words "until a levy, property is not affected by the execution" applied only to personal property, and that no formal levy of an execction upon real property was necessary. This opinion has been followed in several subsequent cases. *Folsom* v. *Carli*, 5 Minn. 264, (333;) *Lockwood* v. *Bigelow*, 11 Minn. 70, (113;) *Bidwell* v. *Coleman*, Id. 45, (78.) But, though a formal levy has thus been held not to be necessary to a valid levy upon real property, it has not, so far as we are aware, been held that such levy was not entirely proper as a step in the regular execution of a writ of execution under the law as it stood in the Public Statutes. We think it was regularly proper, and that, therefore, the sheriff to whom the execution in the case at bar was delivered may justly be regarded as having commenced the execution of his writ by making a levy.

The point that the sheriff had no authority to levy upon real property unless he could find no personal property, (which is not shown,) is disposed of by the presumption that the sheriff did his duty. Having commenced the execution of his writ by a levy before the return day, the sheriff was authorized to go on and complete it by a sale after the return day. *Barrett* v. *McKenzie*, ante, 20.

But it is contended that this rule cannot operate in this case, because the sale under the levy having been postponed to January 6, 1860, an action was, on the third day of January, 1860, commenced in the district court of Ramsey county, by Marshall, against Hart and the sheriff, in which, on January 5, 1860, an injunction was issued, and served upon the

sheriff, enjoining him and his deputies from further proceeding with the execution, and from making sale of any part of the premises levied upon until the further order of the court. No further proceedings were had upon the notice of sale which had been given. On July 26, 1860, the injunction was dissolved. The effect of the injunction was to stop the proceedings upon the execution where they were. But the injunction did not operate to kill the execution which had been issued, nor to destroy or impair the levy·which had been made under it. It was, therefore, competent for the sheriff, after its dissolution, even after the expiration of his term of office, to go on and complete the proceedings which he had commenced under the execution. This he did in this case by advertising a sale of the premises levied upon for September 8, 1860, on which day a sale was had, and the property levied upon (with the exception of three town lots and a half lot) struck off to Hart. For the reasons already adduced this sale must be held valid.

On September 15, 1860, the sheriff executed and delivered to Hart a certificate of sale of the lots and parcels of land so struck off to him, which was duly recorded. Subsequently, and at various times prior to the expiration of the period of redemption, Hart sold and transferred his rights and interests under the certificate of sale to Bidwell, Burrall, Lash, and Turrell, persons holding some of the notes secured by the Marshall mortgage. These sales and transfers were to each of such persons severally of the rights and interests of Hart in specified lots and parcels out of the whole number struck off to him at the execution sale. There was no redemption from the execution sale, and the property was afterwards conveyed by sheriff's deeds, in part to those who purchased from Hart, and in part to their assigns.

The court below finds the following facts, viz.: That in taking their respective assignments from Hart of his interests in the certificate of sale, "Bidwell, Burrall, Lash and Turrell did not act under or in pursuance of any·mutual·agreement,

but each one bought as he himself thought proper, in order to secure his own interest in the Randall notes and mortgages;" that "the plaintiff knew of these purchases of Hart's interest by Bidwell, Burrall, Lash and Turrell," at or shortly after the time of said purchases, which were made at different times between March 1 and September 1, 1861; that at the time of the execution and delivery of the Randall notes and mortgage the firm of John J. Knox & Co. was composed of John J. Knox, Henry M. Knox and John Jay Knox; that thereafter, and about the month of May, 1860, John J. Knox withdrew from the firm; that thereafter and prior to the month of May, 1861, the three Randall notes delivered to John J. Knox & Co., and secured by the Randall mortgage, on account of which the plaintiff John Jay Knox brings this action, were duly assigned and transferred to John J. Knox, who thereby became and continued to be the sole owner thereof until some time in the summer of 1870, when, for a reasonable consideration he transferred the same to the plaintiff John Jay Knox, who has ever since been, and now is, the owner and holder thereof.   The court further finds that neither the plaintiff nor John J. Knox ever made any claim to the purchasers of Hart's interest under his certificate, or to any or either of them, that said purchases enured to the benefit of all the owners of said Randall notes, or of said plaintiff and John J. Knox, or either of them, or claimed any interest in the land embraced in said certificate, the interest of Hart in which was so purchased as aforesaid, or ever offered to contribute or refund their proportion, or any proportion of the moneys expended by said purchasers, or any of them, in purchasing such interest, or ever made any demand upon them, or either of them, to be allowed to come in and share the benefits of said purchases, upon making contribution or otherwise.

The present action appears to have been commenced in July, 1870.   It is also found by the court below that Joseph M. Marshall departed from this state in 1859 or 1860, and has since remained out of it, and has, during all the time

since his departure, wholly failed and neglected to look after or attend to his duties as trustee as aforesaid, or to enforce the payment of the Randall notes by foreclosure or otherwise, or to protect the interests of his *cestuis que trust.*"

As conclusions of law, the court finds that at the time of the purchase from Hart by Bidwell, Burrell, Lash and Turrell, of their respective interests in the certificate of sale, "there was such community of interest between them and the other owners of notes secured by said Randall mortgage, in the property embraced in said certificate, and in said mortgage, that such purchases must in equity be held to have enured at the election of the other owners of said notes within a reasonable time, upon proportionate contribution made, to the mutual benefit of all the owners of said notes;" and, further, that "the plaintiff and his assigns having allowed so long a time to elapse before attempting to make such election must, upon the facts herein set forth," [the same being set forth in this opinion, so far as deemed material for the purposes thereof,] "and in the absence of any excuse or proof of fraud on the part of said purchaser, or of want of notice on the part of the plaintiff and his grantor, be held in equity to be guilty of laches, and to have abandoned any claim to a division of said property so purchased, or to subject it to foreclosure." These conclusions of law are, in our opinion, entirely sound, especially (among other considerations) in view of the changes in price and value to which real property is subject in a new country like this state. 1 Sugden on Vendors, (14th Ed.) 253, and notes; *Hawley* v. *Cramer*, 4 Cow. 718; *Campbell* v. *Walker*, 5 Vesey, 678. This disposes of the appeal taken by the plaintiff.

A separate appeal was taken by defendant Nobles. His answer, which is claimed to be somewhat in the nature of a cross-bill, alleged an arrangement by which certain parties, interested in the Randall mortgage, agreed to release all their right to certain parcels of the property covered by the mortgage to Nobles, in consideration that the Randall note owned

by Nobles "should be cancelled and eliminated from the operation of the mortgage." The answer alleged the execution of certain deeds under this arrangement, to the delivery of which it claimed that Nobles was entitled. It also claimed that Nobles was entitled to have the parcels of land above mentioned adjudged to be his in fee simple, and that he was further entitled to an account and payment over of certain rents of said parcels. The court found the facts relating to the alleged arrangement, and to what was done under it, otherwise than as alleged in the answer; and, further, as a conclusion of law, found that Nobles was not entitled to the specific property claimed in his answer, nor to a delivery of the deeds referred to in his answer.

Such was the issue raised by his answer, and tried and determined by the court below. This determination we see no reason for disturbing. The findings of fact cannot be questioned, as none of the evidence bearing upon them is before us, while the findings of law appear to us to be entirely correct. The claim made in this court with reference to the purchases made of Hart by Lash, Turrell, Bidwell and Burrall, (being substantially that made by the plaintiff with regard to the same purchases,) and the manner in which they should be treated, was not within the issue made below by Nobles' answer, and as respects Nobles was not submitted to, or tried or passed upon, by the court below. It follows that Nobles cannot be heard to make it here. We are not, however, to be understood as asserting that he or his successor in interest can now be heard to make it anywhere.

The judgment is affirmed.

Gilfillan, C. J., having been of counsel, did not sit in this case.