SARA E. BRADLEY and Others v. THOMAS SANDILANDS.[1]

September 18, 1896.

Nos. 10,067—(291).

**Misnomer of Plaintiff in Summons—Judgment by Default.**
    A judgment by default against the defendants in an action is valid, notwithstanding a mistake in the summons in the Christian name of one of the plaintiffs.

**Execution—Return before Sale.**
    Evidence *held* not to justify a finding that the sheriff had returned the execution before he sold the property of the judgment debtors.

Appeal by defendant from a judgment of the district court for St. Louis county, in favor of plaintiffs, entered in pursuance of the findings and order of John H. Norton, Esq., referee. Reversed.

[1] Reported in 68 N. W. 321.

*A. A. Harris* and *Henry E. Harris*, for appellant.
*H. S. Lord*, for respondents.

BUCK, J.   The plaintiffs claim title to lot 9 in block 29 in the town of Oneota, now a part of the city of Duluth.   This claim is made by them as heirs at law of Catherine Ely, who died April 15, 1881.   The defendant claims title to the same property by virtue of a default judgment and an execution sale of the property thereunder.   This judgment and execution sale is assailed by the plaintiffs as void, and hence a cloud upon their title.   On the trial it was agreed by the parties that the title to the lot in question is in the plaintiffs, unless their ancestors were divested of the same by virtue of certain proceedings in an action brought in the district court of St. Louis county, in this state, in the month of September, A. D. 1871, against Catherine Ely and her son, Frank W. Ely, and the sale of said lot under an execution issued upon a judgment in said action.

It appears that in the year 1867, and for many years thereafter, one Oscar Farrar and Samuel H. Wheeler were co-partners in business at Chicago, as Western agents of the Wheeler & Wilson Sewing Machine Company, under the firm name of Farrar & Wheeler.   During this time Oscar Farrar had a brother named Arthur Farrar, but who was not a member of the firm of Farrar & Wheeler, but was in their employ as confidential agent and bookkeeper.   On October 3, 1869, one Catherine Ely and her son, Frank W. Ely, made and delivered their promissory note in writing to Oscar Farrar, for $704.66, due in one year, drawing interest at the rate of 7 per cent. per annum.   Before this note became due, Oscar Farrar sold, indorsed, and transferred the same to his brother, Arthur Farrar, and Samuel H. Wheeler.

On September 26, 1871, a summons, wherein Oscar Farrar and Samuel H. Wheeler were designated as plaintiffs, was served on Catherine Ely and Frank W. Ely, as defendants, in which summons it was stated that a complaint in the action had been filed in the office of the clerk of the district court at Duluth, in the county of St. Louis, and which notified the defendants to answer said complaint within 20 days, or, in case of default in so doing, that plaintiffs would take judgment against them for the sum of $704.64, with interest thereon from October 3, 1869, and costs of suit.   While, as a matter of fact,

the complaint so referred to and filed was not entitled as the summons, yet on September 25, 1871, a complaint against the same defendants was filed in the said clerk's office, wherein the plaintiffs were named as Arthur Farrar and Samuel H. Wheeler; and the cause of action was therein stated to be the making and delivering of said note to Oscar Farrar, its sale and delivery by him to plaintiffs before it became due, for a valuable consideration, its ownership by plaintiffs, and nonpayment, and demanded judgment for the amount of the note. There was no appearance on the part of the defendants, and the affidavit of no answer was entitled the same as the complaint, and the affidavit of disbursements entitled similar to the summons. A judgment by default was entered against the defendants in the action October 17, 1871. The title of the action in the judgment attached to the judgment roll was originally written "Oscar Farrar," but at some time was changed to "Arthur Farrar." When it was so changed, does not appear. None of the proceedings were ever amended, and execution was issued upon the default judgment November 10, 1871, and placed in the hands of the sheriff of St. Louis county the same day, who on May 20, 1872, after giving the usual notice, sold the premises to one George Berkleman.

The referee in this action decided in favor of the plaintiffs,—that they were the owners of the lot in controversy,—and ordered judgment accordingly. From the judgment so entered the defendant appeals.

It is unquestioned that the Elys made the note upon which the action was brought; that there was no fraud, mistake, or want of consideration in the making of the note; and that it had never been paid. It clearly appears that Arthur Farrar and Samuel H. Wheeler actually owned the note at the time when the complaint was filed, and that, as such owners, they were the real parties plaintiff in the action. And it also clearly appears that the summons was personally served upon both the defendants Ely. Neither of them appeared in the action, nor in any manner suggested that there was a misnomer in the summons or complaint, or in any proceedings on the part of the plaintiffs. It is expressly found by the trial court that there was such a person as Arthur Farrar, and that he and Samuel H. Wheeler purchased the note of Oscar Farrar prior to the commencement of this action. There is no dispute as to the name of

the other plaintiff being given truly, viz. Samuel H. Wheeler. The Elys permitted the judgment to be taken against them more than 25 years ago, and the defendant holds title derived from the purchaser at the execution sale, having purchased in good faith, for a valuable consideration. Upon all these facts appearing, can it be said that the judgment was a nullity? We cannot so regard it.

The cases where there is a defect in the name of the defendant in the summons or notice have but little, if any, application to the one at bar. The proper parties defendant having been designated in the summons and complaint, and the complaint correctly entitled in the name of the real parties in interest, the misnomer in the summons of the Christian name of one of the plaintiffs, while the others were given correctly, and all the parties were the identical and real parties in interest, would not render a judgment entered in such proceeding, in the true name of all the parties to the action, a nullity. A sum-. mons and complaint such as appear in this case offered the defendants an opportunity to appear and make a defense before judgment; and, if they declined to do so, a judgment in favor of the plaintiffs necessarily established their right to the relief given, as against the defendants who were actually served. Such a judgment would bar Arthur Farrar and Samuel H. Wheeler, as the real parties in interest, from recovering another judgment upon the cause of action stated in this complaint, although the summons was entitled "Oscar Farrar and Samuel H. Wheeler, Plaintiffs." Freeman, Judgm. § 175; McGaughey v. Woods, 106 Ind. 380, 7 N. E. 7. The plaintiffs would be bound by such a judgment, because they, as the identical and real persons in interest, voluntarily prosecuted such a proceeding to a final judgment; and the defendants would be bound thereby, because they suffered the judgment to go against them upon notice of such demand by the persons claiming the real interest therein. It seems like trifling with judicial proceedings to remain silent for so many years, with such knowledge, and then seek, upon such a flimsy pretext, to nullify a meritorious judgment thus rendered.

Vanfleet, in his work upon Collateral Attack (section 367), says:

"In respect to the name of the plaintiff, it does not seem to me that any mistake in that renders the judgment void. If the creditor's real name is John Smith, and he brings suit in the name of George Jones, the defendant has the opportunity to contest and correct that

matter, if he cares to do so.    And if the person who sues is a stranger, to whom he owes nothing, he has an opportunity to show those facts."

Certainly the misnomer of the Christian name of one of the plaintiffs did not affect or change the cause of action against the defendants, and a correction of this name would have left the same cause of action, and the real parties in interest as plaintiffs.    The whole record shows that the writing of the word "Oscar" for "Arthur" was a mere clerical error or misnomer, which, upon application to the court, would have been amended;  and the omission to do so did not affect the jurisdiction of the court to render judgment binding upon the defendants.    See McGaughey v. Woods, supra; Cain v. Rockwell, 132 Mass. 193.

We do not attach any importance to the fact that the name of one of the plaintiffs in the title of the action in the judgment attached to the judgment roll was originally written "Oscar Farrar," and that the same was at some time changed to "Arthur Farrar."    It does not appear when, or who made the change.    It might have been changed before the judgment roll was finally completed, and, in the absence of any evidence upon the question, such would doubtless be the presumption;  and thus the judgment would be valid on its face, under the view we take of the law.

This judgment recites the fact that the summons in this action was personally served on the defendants September 26, 1871, and that no copy of any answer or demurrer to the complaint on file had been served on plaintiffs' attorneys as required by the summons.    The execution recited the fact that a judgment had been rendered on October 17, 1871, for $817.03, in the district court of St. Louis county, and state of Minnesota, wherein Arthur Farrar and Samuel H. Wheeler were plaintiffs, and the Elys defendants.

It is contended, however, by the plaintiffs, that this execution was filed by the sheriff in the office of the clerk of the district court six days after its issue, and that the clerk placed his filing thereon, and subscribed his name thereon as clerk, and that such filing exhausted the life of the execution, it not having been renewed.    It appears that the sheriff levied upon the lot in controversy on November 10, 1871,—the day the execution was delivered to him, and upon which he noted such levy.

We do not regard the finding of the referee that the sheriff filed the execution with the clerk on November 16, 1871, as supported by the evidence. There is no such allegation in the complaint, and, though the defendant so alleges affirmatively in his answer, yet this is denied by the plaintiffs in their reply, thus forming a direct issue upon this question, and the evidence fails to establish the fact. While the clerk's indorsement of filing the execution is upon the back thereof, yet it does not appear that the sheriff ever made any return thereon of any kind prior to the time of the execution sale. His name is not on the execution, and there is no evidence that he ever filed it, or consented to its being filed. Certainly it was not his duty to either make a return or file it at the time of the alleged indorsement of filing by the clerk. Having made a levy on the lot in question, and noted the fact of such levy upon the execution, it would have been his duty to proceed and sell the property before making a return of, or filing, the execution. The presumption is that the sheriff did his duty in this respect. Knox v. Randall, 24 Minn. 479.

The record therefore fails to disclose any fact which affected or destroyed the life and force of the execution, unless the long delay in selling the lot after the receipt of the execution, and its levy upon the property in question, had that effect. But this levy was made long before the return day of the execution, and that a sale may be in such case completed by a sale after such day is held in Barrett v. McKenzie, 24 Minn. 20; Knox v. Randall, supra; Spencer v. Haug, 45 Minn. 231, 47 N. W. 794.

Our conclusion is that the judgment should be reversed, and it is so ordered.